UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

WILLIAM T ROMANOWSKI, et al.,

Defendants.

Case No. 23-cv-03003-YGR   (ASK)

**ORDER RE: DISCOVERY DISPUTE**

Re: Dkt. Nos. 90, 100

At her March 2026 deposition, Defendant Julie Romanowski asserted attorney-client privilege in refusing to answer questions on the reasons for opening and using the N53 Wells Fargo bank accounts. Ms. Romanowski testified that she spoke with her attorney, Brian Isaacson, before opening one of the business accounts, and that it was Mr. Isaacson who authorized her use of that account. Dkt. 90-6 at 3-4. However, she refused to answer questions concerning her reasons for using the "business bank accounts to live [her] personal life" rather than maintaining a personal bank account. Dkt. 90-6 at 5-8, 9-10. Her only response was that, "[a]fter conversations with counsel[,] [she and Mr. Romanowski] opted not to open a[] [personal] account." Dkt. 90-6 at 9. When asked whether her counsel told her to hide assets, Ms. Romanowski asserted the privilege. Dkt. 90-6 at 10.

The United States insists that Ms. Romanowski waived any privilege over the advice that she received from her "former attorney, Brian Isaacson, [] on opening bank accounts in N53's name" by previously disclosing the substance of that advice in her bankruptcy action and/or putting that advice at issue in this action. Dkt. 90 at 1. The United States seeks an order compelling Ms. Romanowski to provide substantive responses to their unanswered questions on her communications with Mr. Isaacson regarding "(1) opening the N53 accounts at issue; (2) depositing personal checks into business accounts; (3) not opening personal accounts; (4) paying

personal expenses from business accounts; and (5) delaying filing tax returns." Dkt. 100 at 6. For the reasons explained below, the Court **GRANTS** the United States's motion.

## I.    LEGAL STANDARD

"The attorney-client privilege protects confidential communications between attorneys and clients, which are made for the purpose of giving legal advice." *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116 (9th Cir. 2020). The privilege extends to a client's confidential disclosures to an attorney in order to obtain legal advice, as well as an attorney's advice in response to such disclosures. *United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (cleaned up). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Id.* (cleaned up).

Parties may waive the privilege expressly or by implication. *United States v. Sanmina Corp.*, 968 F.3d 1107, 1116–17 (9th Cir. 2020). Express waiver "occurs when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Id.* at 1117. "In contrast, waiver by implication, or implied waiver, is based on the rule that a litigant waives the attorney-client privilege by putting the lawyer's performance at issue during the course of litigation." *Id.* (cleaned up). Implied waiver rests on the principle "that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to privileged materials." *Id.* (cleaned up). In other words, parties are prohibited "from using the privilege as both a shield and a sword." *Id.* (cleaned up).

> This fairness principle also animates the concept of **subject matter waiver**, in which **voluntary disclosure of the content of a privileged attorney communication constitutes waiver of the privilege as to all other such communications on the same subject**. Under this rule, disclosure of information resulting in the waiver of the attorney-client privilege constitutes waiver **only as to communications about the matter actually disclosed**.

*Id.* (cleaned up & emphasis added).

## II.    DISCUSSION

The United States argues that Ms. Romanowski waived the attorney-client privilege expressly by disclosing her former tax attorney's advice in prior testimony and implicitly by

United States District Court
Northern District of California

putting that attorney's advice at issue in this action.

### A. Express Waiver

The United States identifies four excerpts from Ms. Romanowski's Summer 2024 bankruptcy testimony in which she purportedly disclosed "the advice Mr. Isaacson provided on: avoiding using [the Romanowskis'] own bank accounts to shield funds from the IRS; delaying filing their taxes; and opening bank accounts in N53's name." Dkt. 100 at 2. In those excerpts, Ms. Romanowski testifies that:

- "Brian Isaacson had advised us just to make sure that we did everything in cash . . . and he said the IRS would just swoop in and take any penny and every dollar, which they have. So, we did not have a bank account per the advice of . . . our tax attorney, Brian Isaacson." Dkt. 100-1 at 4:16-21.

- The Romanowskis took "several years to file [their] delinquent tax returns" because their "tax attorney, Brian Isaacson, told [them] . . . Let's get through this lien and levy, and as soon as that happens, . . . we will go ahead and file the tax returns." Dkt. 100-2 at 3:4-13.

- She "filled out the business bank application for [the] Wells Fargo account[]" "with the help of [their] attorney, Brian Isaacson. . . . [H]e had [them] set up the account name of Nutrition 53 II." Dkt. 100-3 at 2:12–3:3.

- She created "a business account" rather than an account "in [her] and [her] husband's name" because "Brian Isaacson suggested that [they] open up this account, considering the fact that with [their] company, [they] would have the COO come and live in [their] home for two weeks out of each month . . . ." Dkt. 100-3 at 3:20–4:5.

In this bankruptcy testimony, Ms. Romanowski discloses Mr. Isaacson's advice not to maintain a personal bank account lest the IRS "swoop in[.]" Dkt. 100-1 at 4:16-21. She reveals that Mr. Isaacson advised the Romanowskis to set up the Wells Fargo accounts as business— rather than personal—accounts in the name of N53. Dkts. 100-3 at 2:12–3:3, 3:20–4:5. These disclosures constitute an express subject-matter waiver of the attorney-client privilege over Ms.

3

United States District Court
Northern District of California

Romanowski's conversations with Mr. Isaacson regarding the subjects of (a) the Romanowskis' use of N53 bank accounts, versus personal bank accounts, for conducting their finances, and (b) the timing of her tax filings. Collectively, these waived subject matters cover all of the topics on which the United States seeks a finding of waiver. It is immaterial that this waiver occurred in a different proceeding. *See In re Cavagnaro*, No. C07MC-00027-RT, 2007 WL 4571194, at *5 (W.D. Wash. Dec. 26, 2007) ("Federal courts have generally concluded that information, once disclosed to a party opponent, waives the attorney-client privilege as to future proceedings." (cleaned up)).

Ms. Romanowski's arguments fail to change this result. She insists that her bankruptcy testimony was made on behalf of N53, and thus only waives N53's privilege because "[c]orporations enjoy a direct, separate attorney-client privilege in California." Dkt. 100 at 6. But she provides no evidence supporting her factual contention that she was testifying only on N53's behalf. By contrast, the government contends that Ms. Romanowski's bankruptcy testimony was made "In the Matter of: WILLIAM T. ROMANOWSKI and JULIE I. ROMANOWSKI" on her own behalf. *See* Dkt. 100-1 at 1; 100-2 at 1; 100-3 at 1. As the party bearing the burden to establish the existence of the privilege, Ms. Romanowski fails to provide evidence substantiating her factual claim that her bankruptcy testimony was not on her own behalf. The Court therefore finds, based on this record, that Ms. Romanowski waived her own privilege, and not merely that of N53.

### B.    Implied Waiver

The United States claims that Ms. Romanowski implicitly waived the privilege by identifying Mr. Isaacson as a fact witness and "affirmatively relying on Mr. Isaacson's advice to explain and justify [the Romanowskis'] conduct[.]" Dkt. 90 at 3.

> An implied waiver of the attorney-client privilege occurs when (1) the party asserts the privilege as a result of some affirmative act, such as filing suit; (2) through this affirmative act, the asserting party puts the privileged information at issue; and (3) allowing the privilege would deny the opposing party access to information vital to its defense.

*Apple Inc. v. Samsung Elecs*. Co., No. 11-CV-01846-LHK, 2015 WL 3863249, at *7 (N.D. Cal. June 19, 2015) (quoting *Home Indemnity Co. v. Lane Powell Moss and Miller,* 43 F.3d 1322, 1326

4

United States District Court
Northern District of California

(9th Cir. 1995)). "A plaintiff may put his or her attorney's advice in issue by filing a malpractice action against the lawyer or a defendant may assert reliance on the advice of counsel as an affirmative defense." *Genentech, Inc. v. Insmed Inc.*, 236 F.R.D. 466, 468 (N.D. Cal. 2006). But "[a]dvice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner." *Id.* at 469. Moreover, implicit "[w]aiver is not likely to be found when the statements alleged to constitute waiver do not disclose the contents of a specific communication between client and attorney. The mere denial of intent is insufficient to establish waiver of the privilege." *Id.* (cleaned up).

In this action, "the United States seeks to foreclose its tax liens against N53's assets on the grounds that N53 is the Romanowskis' alter ego." Dkt. 1 ¶ 17. The United States alleges that, since the Tax Court determined that the Romanowskis personally owed a tax deficiency of $15,330,277.83, *id.* ¶¶ 27-30, "the Romanowskis have used N53's corporate funds to pay their personal living expenses." *Id.* ¶ 64. According to the United States, "[b]y using N53 to pay their personal living expenses and those of their adult children, the Romanowskis have improperly used N53 to thwart the IRS's collection of the individual income tax assessments at issue in this case." *Id.* ¶ 114. The United States insists that, "[i]f the corporate fiction of N53 is not disregarded, the Romanowskis will continue to use N53's funds to improperly shield their assets and income from the IRS's collection[.]" *Id.* ¶ 116. So, the United States requests a determination that N53 is the alter ego of the Romanowskis in Count Two. *Id.* ¶¶ 106-17.

To establish that N53 is liable for the Romanowskis' personal tax deficiency under an alter ego theory, the United States must demonstrate "(1) that there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 597 (N.D. Cal. 2012), *aff'd sub nom. Bank of Montreal v. Salyer*, 599 F. App'x 706 (9th Cir. 2015). "To determine whether there is a sufficient unity of interest and ownership to support alter ego liability," courts consider, among several other factors, "the treatment by an individual of the assets of the corporation as his own;" "the use of the

5

United States District Court
Northern District of California

corporation as a mere shell, instrumentality or conduit for a single venture or the business of an individual or another corporation;" and "the contracting with another with intent to avoid performance by use of a corporate entity as a shield against personal liability[.]" *Id*. at 597-98. As to the second requirement of the alter ego test, the question is whether "adherence to the fiction of the separate existence of the corporation would, under the particular circumstances, sanction a fraud" or "work an injustice to a third person." *Bank of Montreal v. SK Foods, LLC*, 476 B.R. 588, 600 (N.D. Cal. 2012), *aff'd sub nom. Bank of Montreal v. Salyer*, 599 F. App'x 706 (9th Cir. 2015).

Ms. Romanowski's intended purposes for the N53 Wells Fargo accounts—including the Romanowskis' reasons for opening, depositing checks into, and using the accounts for personal expenses—are thus highly relevant to the ultimate determination of whether N53 is the Romanowskis' alter ego. When the United States asked questions at Ms. Romanowski's March 2026 deposition targeted toward those intended purposes in an effort to establish that the Romanowskis opened and used these N53 Wells Fargo accounts to evade the IRS, Ms. Romanowski refused to answer on privilege grounds. However, she did testify that (1) Mr. Isaacson authorized her opening of the N53 Wells Fargo accounts, Dkt. 100-4 at 56:9-11, 60:14–61:13, 320:20-24; (2) she spoke with Mr. Isaacson before opening each account, Dkt. 100-4 at 64:12-17; (3) she and her husband opted not to open a personal bank account based on conversations with Mr. Isaacson, Dkt. 100-4 at 155:7-22, 211:6-10; and (4) she decided against filing timely tax returns based on conversations with Mr. Isaacson. Dkt. 100-4 at 322:21-23. For example, the United States asked, "Why didn't you deposit these checks into your own personal bank account?" Dkt. 100-4 at 155:7-8. Ms. Romanowski, refusing on privilege grounds to answer the question as posed, instead responded, "After having conversations with [Mr. Isaacson,] we opted not to open an account." *Id*. at 155:20-22.

This and other carefully crafted non-responses demonstrate Ms. Romanowski's improper invocation of the privilege "as both a shield and a sword, that is, to reveal a limited aspect of privileged communications in order to gain a tactical advantage in litigation." *Century Aluminum Co. v. AGCS Marine Ins. Co.*, 285 F.R.D. 468, 472 (N.D. Cal. 2012). To avoid addressing her own

United States District Court
Northern District of California

intent, Ms. Romanowski injected Mr. Isaacson's privileged advice into the case by revealing that her only reasons for opening and using the N53 Wells Fargo accounts for personal expenses were those supplied by Mr. Isaacson. This tactic amounts to more than a mere denial of intent—Ms. Romanowski here asserts her counsel's advice as a defense to the allegation that she and her husband improperly used N53 to handle their personal finances. She seeks to avert blame from herself and place it on her lawyer.

Ms. Romanowski thus implicitly waived the privilege over her attorney-client communications with Mr. Isaacson by relying on Mr. Isaacson's advice to justify her opening and use of the N53 Wells Fargo accounts. As she testified in her bankruptcy proceeding, "[e]verything that we have ever done . . . has been at the advice of our tax attorney." Dkt. 100-2 at 3:22-24; *see also* Dkt. 100-1 at 5:9-11 ("[E]verything [the Romanowskis] have done has been under the guidance of [their] tax attorney[.]").

### III.    CONCLUSION

Ms. Romanowski has both expressly and implicitly waived attorney-client privilege over all five topics identified by the United States. Accordingly, the Court **GRANTS** the United States's motion to compel testimony related to Ms. Romanowski's conversations with Mr. Isaacson regarding "(1) opening the N53 accounts at issue; (2) depositing personal checks into business accounts; (3) not opening personal accounts; (4) paying personal expenses from business accounts; and (5) delaying filing tax returns." Dkt. 100 at 6. The United States is permitted to depose Ms. Romanowski for 90 more minutes to obtain such testimony.

**IT IS SO ORDERED.**

Dated: June 10, 2026

_____
AJAY KRISHNAN
United States Magistrate Judge